# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
* * *

| | |
|---|---|
| STEVEN D. HIGUERA, | Case No. 2:16-cv-00225-JCM-PAL |
| Petitioner, | ORDER |
| v. | |
| BRIAN WILLIAMS, JR., et al., | |
| Respondents. | |

This *pro se* 28 U.S.C. § 2254 habeas petition filed by Steven D. Higuera comes before the court for final disposition on the merits (ECF No. 5).

**I.   Procedural History and Background**

A jury convicted Higuera of grand larceny on February 14, 2008 (exhibit 2A).[1] The state district court sentenced him, pursuant to Nevada's large habitual criminal statute, life in prison with the possibility of parole after 10 years. Exh. 2B. Judgment of conviction was filed on April 1, 2008. *Id.* The Nevada Supreme Court affirmed the conviction on February 3, 2009. Exh. 5.

In February 2010, Higuera filed a state postconviction habeas corpus petition. Exh. 6A. In January 2013, the Nevada Supreme Court affirmed the denial of the petition in part and reversed and remanded in part. Exh. 6C. The Nevada Supreme Court remanded for an evidentiary hearing on the claim that Higuera's counsel was ineffective for failing to locate witness Arnold Olmo and affirmed the denial of the remaining claims.

---
[1] Exhibits referenced in this order are exhibits to respondents' answer, ECF No. 10, and are found at ECF Nos. 11-12.

1

*Id.* The state district court conducted an evidentiary hearing and denied the remanded claim. Exh. 8. The Nevada Supreme Court affirmed the denial on December 18, 2015. Exh. 9.

Higuera dispatched his federal petition for mailing on February 2, 2016 (ECF No. 5). Respondents answered the petition (ECF No. 10). Higuera did not file a reply in support of the petition.[2]

## II. Legal Standards

### a. AEDPA Standard of Review

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538

---
[2] The Nevada Department of Corrections online inmate information reflects that Higuera was released on parole in 2017.

2

U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we

3

would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel (IAC) claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the

petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has

5

specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

As discussed below, Higuera has failed to show that the Nevada Supreme Court's decision on any of his IAC claims was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d).

**III.     Instant Petition**

Higuera claims that his trial counsel was ineffective for failing to investigate and present Arnold Olmo as a witness (ECF No. 5, pp. 3-5).

The trial testimony reflected the following. Higuera's friend or acquaintance Arnold Olmo was living or staying at his cousin's house on Thunder Rapids Court in Las Vegas. Olmo's Thunder Rapids neighbor identified Higuera as a man who was in the Thunder Rapids driveway the morning of the incident with a pickup truck; Higuera told the neighbor he was dropping off furniture. Exh. 3, pp. 101-105. Redan Magbanua testified that Olmo was her uncle and that her motorcycle was being stored in the Thunder Rapids garage. *Id.* at 112-138. On the day in question, Olmo called

6

Magbanua and asked him if he had taken her motorcycle from the garage, which she had not. She went to the Thunder Rapids residence and discovered it had been ransacked, and the motorcycle was gone. Later that day, the police called her to come over to Higuera's nearby house. The motorcycle was there, with a damaged ignition. *Id.*

A police detective testified that he went to Higuera's residence that day and found the garage door open and a motorcycle inside that matched the description of Magbanua's bike. *Id.* at 162-209. He verified that the VIN number matched. He stated that Higuera told him that he had gone into Olmo's home, found that it had been ransacked, and took the motorcycle to his house for safekeeping. *Id.*

Higuera's stepdaughter testified that prior to the incident she had helped Higuera move some of Olmo's things from the Thunder Rapids house to Higuera's garage, because Olmo was in jail. *Id.* at 209-224. On cross-examination, she acknowledged that when Higuera brought the motorcycle to his garage, he did not say that the Thunder Rapids house had been ransacked nor that he brought the bike over for safekeeping. *Id.*

In Higuera's state postconviction proceedings, the Nevada Supreme Court remanded this claim to the state district court for an evidentiary hearing. Exh. 6C at 2. Higuera asserted that Olmo would have testified that Higuera had permission to store Olmo's belongings while Olmo was incarcerated, which would have supported Higuera's claim that he mistakenly believed he was assisting Olmo when he took the property and therefore did not have the intent to commit larceny. The state supreme court explained that because Higuera presented facts that, if true, would entitle him to relief, the district court should have held an evidentiary hearing on whether counsel was deficient in her attempts to locate Olmo and whether Higuera suffered prejudice. *Id.*

The state district court conducted an evidentiary hearing on the remanded claim. Exhs. 7A, 7B. Higuera's trial counsel testified that based on Higuera's assertion that

7

Olmo gave him permission to take the motorcycle she had her investigator try to locate him. Exh. 7A at 7-17. The investigator tried all known addresses and attended Olmo's court dates; a bench warrant issued for Olmo because he did not attend the court dates. Counsel did not conduct the investigation personally because she did not want to become a witness in the case. Counsel secured a continuance while they attempted to locate Olmo. Counsel stated that Higuera ultimately agreed they should proceed to trial when they were unable to locate Olmo. *Id.*

Arnold Olmo finally was located and testified at the state postconviction evidentiary hearing. Exh. 7B at 15-27. He stated that during the time of Higuera's trial he was in the middle of a divorce, was using drugs, and traveled to the Philippines and China for at least 6 months. His family told him that an investigator was looking for him; he called the number on the card probably once but did not reach anyone. He stated that the motorcycle belonged to his cousin and that he had not given Higuera permission to take it, but that Higuera had called him "a day or two days later" to tell Olmo he had the motorcycle. *Id.*

Higuera also testified; he stated that his daughter told him there was some property missing from the Thunder Rapids house, so he went over and found that it had been ransacked. *Id.* at 28-33. The garage door was open, and the motorcycle was in the garage. He brought the bike to his house and left a note for Olmo and a message on his cellphone telling him to come to Higuera's house after work. Higuera testified that he told his attorneys that he did not want to go forward with trial without Olmo to testify.

The state district court denied the petition, finding that Higuera did not demonstrate that counsel was ineffective in failing to locate Olmo because Olmo's testimony reflected that he was very difficult to locate at the time in question. *Id.* at 41-42. The court noted that state postconviction counsel had also had great difficulty in locating Olmo.

The Nevada Supreme Court affirmed the denial of the claim:

8

> Higuera has failed to demonstrate that counsel was deficient. The defense investigator went to Olmo's known addresses, but Olmo's home was in foreclosure, he did not have a stable residence, and he changed phone numbers. The investigator attended Olmo's own court hearings in an effort to contact and serve him with subpoenas, but Olmo failed to appear. The investigator also attempted to contact Olmo through his family but to no avail as Olmo had very little contact with them at the time. Further, Olmo testified at the postconviction evidentiary hearing that he was out of the country for months at a time leading up to and during trial. Finally, counsel explained her reasoning in not personally conducting the investigation. Counsel made reasonable efforts to locate Olmo, and Higuera fails to identify what additional efforts counsel should have made leading up to trial. We therefore conclude that the district court did not err in denying this claim . . . .

Exh. 9 at 2.

Respondents further point out that the trial testimony and Olmo's testimony at the evidentiary hearing was that Olmo was not the owner of the motorcycle and had not given Higuera permission to take it. Higuera has not demonstrated that the Nevada Supreme Court's decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Accordingly, his federal petition is denied.

**IV.     Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

9

Having reviewed its determinations and rulings in adjudicating Higuera's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of Higuera's petition.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that the petition (ECF No. 5) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment and close this case.

DATED: March 12, 2019.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE